UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FAMILY HEALTH CENTERS OF
SOUTHWEST FLORIDA, INC., a
Florida non-profit corporation,

    Plaintiff,

v.                                                                  Case No.:  2:21-cv-278-SPC-NPM

SIMONE MARSTILLER,

    Defendant.

_____/

## **OPINION AND ORDER**[1]

Before the Court are Plaintiff Family Health Centers of Southwest Florida, Inc.'s ("FHC") Motion for Summary Judgment (Doc. 63) and Defendant Simone Marstiller's Motion for Summary Judgment (Doc. 65). The parties have filed responses and replies. (Doc. 71; Doc. 72; Doc. 73; Doc. 74). Also before the Court is FHC's Unopposed Request for Judicial Notice in Support of its Motion for Summary Judgment. (Doc. 64). These motions are ripe for review.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

## BACKGROUND[2]

This case is about a Medicaid reimbursement rate. FHC is a health center that treats Medicaid beneficiaries. It is reimbursed at a set rate for the services it provides. FHC recently asked the State of Florida to increase its reimbursement rate to account for its growing workforce and services. The State mostly denied the request, and this suit followed. FHC sued both the Federal and State Medicaid Secretaries, but the Court dismissed the Federal Secretary. (Doc. 48). FHC's case against the State Secretary ("Secretary") remains.

The Court begins with some necessary background on Medicaid. Title XIX of the Social Security Act created Medicaid to enable states to provide medical care to certain low-income, elderly, and disabled persons. Participating states have flexibility to design and administer their programs. But their autonomy is limited. Pertinent here, each state must submit a "state plan" for the Federal Secretary to approve. And if a state later seeks to modify the plan, it must submit a "state plan amendment" ("SPA") for approval.[3] All state plans and any amendments must track federal laws and regulations.

---

[2] Because the Court writes for the parties, it assumes familiarity with the facts and writes only those necessary for resolving the parties' motions. Unless otherwise noted, the parties either agree on these facts or they were undisputed in the record.

[3] Technically, a state submits a state plan amendment to the Center for Medicare and Medicaid Services ("CMS") within the Department of Health and Human Services to whom

Under Medicaid, states must reimburse federally qualified health centers ("FQHC")—like FHC—for their covered Medicaid services. *See* [42 U.S.C. § 1396a(bb)](). Florida and other states use the prospective payment system ("PPS") to reimburse FQHCs at a predetermined, fixed rate. The rate is specific to each FQHC and is calculated based on historical costs of providing care to patients. But a FQHC is not stuck with its fixed rate forever. The rate is adjusted yearly for inflation and can be adjusted for "any increase or decrease in the scope of such services furnished by the center or clinic during that fiscal year." *Id*. [§1396a(bb)(3)]().

What is meant by "any increase or decrease in the scope of such services" is the crux of this suit. Mirroring federal language, Florida states an individual FQHC's rate may be adjusted upon "[a]n increase or decrease in the scope of service(s)." ([Doc. 64-1]()). But Florida defines this condition as "the addition of a new service not previously provided by the FQHC" or "the elimination of an existing service provided by the FQHC." *Id*. The question is whether Florida's definition is impermissibly narrow in violation of federal law.

In part, FHC argues Florida's definition is too narrow because CMS defines "any increase or decrease in the scope of such services" more broadly. In 2010, CMS issued general guidance (in a letter to state health officials with

---

the Federal Health and Human Services Secretary has delegated its approval authority. *See* [42 C.F.R. §§430.14-430.15]().

3

an attached question-and-answer guide) on what is meant by "any increase or decrease in scope of such services":

> A change in scope of FQHC and RHC[4] services should normally occur only if: (1) center/clinic has added or has dropped any service that meets the definition of FQHC and RHC services (i.e., that the FQHC or RHC is qualified to provide in the State); and, (2) the service is included as a covered CHIP[5] service under the CHIP State plan.  Additionally, a change in the scope of services could also occur when a service is added or dropped as a covered CHIP service. **A change in the "scope of services" is defined as a change in the type, intensity, duration and/or amount of services**.  A change in the cost of a service is not considered in and of itself a change in the scope of services.  The State must develop a process for determining a change in the scope of services.

Doc. 64-3 (bolded emphasis added).[6]

Boiled down, FHC wants the Court to find that Florida's definition of scope of services violates federal requirements and require Florida to submit a SPA to the Federal Secretary incorporating CMS's definition of a change in the scope of services as a change in the type, intensity, duration and/or amount of services.  (Doc. 31 at 65, 70).

---

[4] RHC refers to rural health centers, which are not at issue.

[5] CHIP refers to Children's Health Insurance Program, which extends Medicaid to cover children.

[6] This definition of "change in the scope of services" was the same in 2001 CMS guidance. Doc. 64-2.

4

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.*

For issues the movant must prove, the "movant must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2013) (citation omitted). But for issues the non-movant bears the burden, the movant has two options: (1) point out a lack of evidence to support the nonmoving party's case; or (2) provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (citation omitted). "The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a

genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).

At the summary judgment stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002). It may not undertake credibility determinations or weigh the evidence when reviewing the record. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010). What's more, "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## DISCUSSION

### A. Judicial Notice

Before addressing summary judgment, the Court considers FHC's Unopposed Request for Judicial Notice. (Doc. 64). FHC seeks judicial notice of Florida's SPA 2014-012 and CMS guidance from 2001 and 2010. *Id*.

Fed. R. Evid. 201 allows judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take judicial notice at any stage of the proceeding. Fed. R. Evid. 201(d). The State Secretary does not oppose FHC's request. (Doc. 64).

So the Court grants it and takes judicial notice of the requested documents. (Docs. 64-1, 64-2, 64-3).

**B. Summary Judgment**

This case is quintessentially appropriate for summary judgment. There are no genuine disputes of fact. All that exists is a legal determination of whether Florida's definition of "any increase or decrease in the scope of such services" is impermissibly narrow in violation of federal law. For the following reasons, the Court finds it is.

The Court begins with the text of the statute—as it must. *United States v. Steele,* 147 F.3d 1316, 1318 (11th Cir. 1998). Statutory words are given their ordinary meaning. *Am. Tobacco Co. v. Patterson,* 456 U.S. 63, 68 (1982); *Caminetti v. United States,* 242 U.S. 470, 485-86 (1917). If statutory language is plain, courts must enforce it according to its terms. *King v. Burwell,* 576 U.S. 473, 486 (2015). Courts presume Congress "says in a statute what it means and means . . . what it says there." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (cleaned up).

Federal law dictates Florida adjust FHC's rate "to take into account any increase . . . in the scope of such services furnished by the center or clinic during that fiscal year." 42 U.S.C. § 1396a(bb)(3). Florida limits this to providing rate increases only when a new service is added. (Doc. 64-1). But that's not what

7

the statute says—the statute says, "any increase . . . in the scope of such services," not just the addition of a new service.

Taking a deeper dive into the federal words, using "any" instructs this Court that Congress intended the kind of increases warranting "scope" rate adjustments to be broad and encompass many circumstances. *See [CBS Inc. v. PrimeTime 24 Joint Venture,](https://...) 245 F.3d 1217 (11th Cir. 2001)* (finding "any" means "every" or "all," Congress knows this and uses it in this sense, and "any termination" means "all terminations of any kind."). And using the term "scope" also suggests room for FQHCs to receive adjustments for a wide range of reasons. Relevant here, Merriam Webster, the Oxford English Dictionary, and the American Heritage Dictionary all define "scope" as the "extent" of something. *Scope*, Merriam Webster, https://www.merriam-webster.com/dictionary/scope, (last visited Feb. 23, 2023); *Scope*, Oxford English Dictionary, https://www.oed.com/view/Entry/172974?result=2&rskey=iCYVLY& (last visited Feb. 23, 2023); *Scope*, The American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=scope (last visited Feb. 23, 2023). A change in the extent of services covers more than just an addition or elimination of a service. And Black's Law Dictionary defines "change of scope" as a change in *magnitude* or composition, not just composition. *Change of scope*, Black's Law Dictionary, https://thelawdictionary.org/change-of-scope/

8

(last visited Feb. 23, 2023). Together, the words Congress used make clear Florida's definition of change in scope is too narrow.

Cannons of statutory construction confirm the Court's reading.[7] First, it is a "cardinal principle of statutory construction" that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cleaned up); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used." (cleaned up)). Remember, the federal statute calls for a rate adjustment for "any increase or decrease *in the scope of* such services" (emphasis added). Florida's definition as the addition of a new service or the elimination of an existing service is equivalent to the federal statute reading "any increase or decrease in services." This impermissibly gives no effect to "scope."

Second, a word is presumed to bear the same meaning throughout a text unless context requires otherwise. *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1192 (11th Cir. 2019). How § 1396a uses "scope" throughout implies there can be a change in the scope of a single service, contradicting Florida's

---

[7] Sometimes courts consider the plain meaning of the statute as one of the canons of statutory construction. *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, n.6 (11th Cir. 2001). As the Eleventh Circuit explained, "[w]hile this may be true, we believe that the clear language of a statutory provision holds a status above that of any other canon of construction, and often vitiates the need to consider any of the other canons. Therefore, if the plain meaning rule is a canon of construction, it is the largest caliber canon of them all." *Id.*

9

definition. For example, § 1396a(10)(G) requires, "the making available of such services of the same amount, duration, and scope, to individuals of any ages." This implies that each service needs to have the same amount, duration, and scope. There is such a thing then as the scope of a single service, contradicting Florida's definition of scope as the addition of a service or the elimination of a service. Further support for this comes from regulatory rules surrounding the Medicaid and Medicare systems. *See, e.g.*, 42 C.F.R. § 440.230(a) ("The plan must specify the amount, duration, and scope of each service[.]").

So it's unambiguously clear "any increase or decrease in the scope of such services" as used in 42 U.S.C. § 1396a(bb)(3) is more expansive than Florida's more limited definition. Text, context, and structure all support this.

Such an interpretation also serves the policy considerations underlying the statute. *Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011) ("[C]onsidering the provision in conjunction with the purpose and context leads us to conclude that only one interpretation is permissible."); *Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1196 (11th Cir. 2008) (considering how the interpreted language "serves the policy considerations underlying" the statute). Congress clearly intended to ensure FQHCs caring for Medicaid eligible patients are appropriately reimbursed for the services they provide so they can stay in business and continue to care for patients. The Court knows

this because Congress explicitly set FQHCs' base rate at 100% of the reasonable costs of providing services in previous years or "based on such other tests of reasonableness." §§ 1396a(bb)(2); 1396(a)(bb)(4). The purpose of this requirement was "to ensure that health centers receiving PSA grants would not have to divert grant funds to cover the cost of serving Medicaid patients. In other words, Congress intended Medicaid to stand on its own." *E.A. Hawse Health Ctr. v. Bureau of Med. Servs.*, No. 2:11-CV-00062, 2011 WL 4528492, at *1 (S.D.W. Va. Sept. 28, 2011) (cleaned up).

It's clear then that the language of § 1396a(bb)(3) must be interpreted to ensure that adjustments allow FQHCs to maintain reasonable rates. It makes no sense to endorse an interpretation of the at-issue language that drops a FQHC's rate far below their reasonable cost of providing services.[8]

The parties spend much briefing debating the deference entitled to CMS's definition of "change in scope." But the Court need not, and will not, reach that issue here. See *United States v. Silva*, 443 F.3d 795, 797–98 (11th Cir. 2006) ("If the statute's meaning is plain and unambiguous, there is no need for further inquiry." (cleaned up)); *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001) ("[W]here the meaning of a statute is

---

[8] It is undisputed that in federal fiscal year 2021, FHC's cost per visit was $184.97. (Doc. 63). The PPS Rate Florida paid them was $120.44, approximately 65% of FHC's cost of services. *Id.*

11

discernible in light of canons of construction, we should not resort to legislative history or other extrinsic evidence.")).  At most, the Court finds that CMS's guidance defining change in scope more broadly than Florida supports that the plain meaning of the statue is more expansive than Florida's definition.  So too does the fact that most states use a more expansive definition and have given "scope of such services" increases for things Florida denied.  (Doc. 72-2; Doc. 63-4 at Pgs. 11-12, 18; Doc. 65-12 at 46:23-47:11).

In sum, Florida's limited definition of "change in scope" as the addition or elimination of a service is inconsistent with 42 U.S.C. § 1396a(bb)(3)'s statutory language "any increase or decrease in the scope of such services." The statute's broader meaning is clear from its text, context, and purpose.

One final point.  In issuing this Opinion and Order, the Court finds only that the Florida's current definition of scope of services is inconsistent with the broader federal statute.  The Court will not extend its reach to define "any increase or decrease in the scope of such services" or mandate the Secretary define it in a specific way beyond that it must comport with federal law.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Doc. 63) is **GRANTED**.

2. Defendant Simone Marstiller's Motion for Summary Judgment (Doc. 65) is **DENIED**.

3. Plaintiff Family Health Centers of Southwest Florida Inc.'s Unopposed Request for Judicial Notice in Support of Its Motion for Summary Judgement (Doc. 64) is **GRANTED**.

4. The Clerk is **DIRECTED** to enter judgment, deny any pending motions, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on February 28, 2023.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:    All Parties of Record